# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 11-2355

DANIEL R. GILBERT, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided October 24, 2012)

*Robert V. Chisholm* and *Michael S. Just*, both of Providence, Rhode Island, were on the brief for the appellant.

*Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Nisha C. Hall*, Deputy Assistant General Counsel; and *Michele R. Katina*, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge,* and LANCE and DAVIS, *Judges*.

KASOLD, *Chief Judge*, filed an opinion concurring in part and dissenting in part.

PER CURIAM: Veteran Daniel R. Gilbert appeals through counsel that part of a June 30, 2011, decision of the Board of Veterans' Appeals (Board) that denied service connection for a psychiatric disability other than post-traumatic stress disorder (PTSD). Mr. Gilbert argues that the Board legally erred in its application of the presumption of soundness. The Secretary disputes this argument. A panel has been convened to clarify the law on when the presumption of soundness is for application. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990) (panel decision required if case clarifies existing rule of law). For the reasons stated below, that part of the Board decision on appeal will be affirmed.

## I. FACTS

Mr. Gilbert served on active duty from November 1987 to November 1991. Upon enlistment, he noted past substance use, reported no medical history of "depression or excessive

worry" or "nervous trouble of any sort," and was evaluated as psychiatrically normal. Record (R.) at 946. The Board found that the service medical records, though partially illegible, reflect only that he was treated twice for substance use. Upon exit from service, he again reported no depression or nervous trouble and was evaluated as psychiatrically normal.

In 1993, Mr. Gilbert sought mental health treatment, reporting that he had been intermittently suicidal since he was a young child and had depressive episodes on and off throughout his life. Mr. Gilbert identified relationship and financial problems as sources of his current depression, did not mention service, and was diagnosed with, inter alia, depression, alcohol dependence, history of substance abuse, and a personality disorder. Medical reports thereafter continued to diagnose him similarly, to wit: (1) a September 2001 treatment record related his depression, anxiety, and alcohol dependence to "[p]roblems with current divorce, unemployment, financial stressors, move back to Utah, minimal family support," R. at 2246, but also noted Mr. Gilbert's report of being present "when they shot down an airliner loaded with dead bodies" and when "an oil tanker . . . hit a landmine and burned," R. at 2245; (2) a December 2001 treatment record diagnosed depression and noted that Mr. Gilbert reported "on and off problems with panic attacks and depression since discharge[ from the] Navy 1991," R. at 2181; (3) December 2002, December 2003, and March 2004 treatment records attributed his depression to financial and relationship problems and did not mention his service, R. at 2236-39, 2227-30, 2224-26; (4) a July 2005 treatment note diagnosed depression and alcohol dependence, noted that Mr. Gilbert "first noticed he was having a problem with depression just after he was discharged from the Navy in 199[1]," R. at 2192, and found that his symptoms "appear related to tragic events that occurred during his military service: fire on ship, shooting down of an airliner and loss of so many innocent people," R. at 2194; and (5) an August 2005 treatment record related his depression to "[f]inancial; homeless; occupational; longstanding [history] of alcohol dependence," but noted Mr. Gilbert's chief complaint of "need[ing] to get [his] thoughts sorted out from what happened to [him] in the military." R. at 2189.

In June 2005, Mr. Gilbert filed for benefits for, inter alia, chronic depression[1] and subsequently was provided with a number of VA examinations. A December 2007 VA examiner

---

[1] He asserted that his depression began in 1992, shortly after he left service. *See* R. at 2334.

diagnosed depression, alcohol dependence, substance abuse, anxiety disorder, and probable personality disorder, and found these disabilities not related to service. The examiner noted that Mr. Gilbert's substance abuse and personality disorder preexisted service, and that "he brought his depression into service with him." R. at 1520. The examiner also noted that Mr. Gilbert provided a medical history that contradicted the understanding of previous records, due either to memory difficulties from substance abuse or to an attempt to obtain service connection. A September 2009 VA examiner rendered the same diagnoses and also found the disabilities not related to service because they preexisted service.[2] A June 2010 VA examiner found that none of his psychiatric disabilities worsened beyond their natural progression as a result of military service. That examiner noted Mr. Gilbert's report that "he felt depressed for the first time when he was in the Navy," but found that his substance abuse and personality disorder preexisted service and that any depression prior to 2007 was substance induced. R. at 913. Conversely, a February 2011 VA psychiatrist's letter found that Mr. Gilbert's "depression and anxiety are tightly woven to his military experience." R. at 867.

The Board decision on appeal notes that no psychiatric disability was noted upon entry to service and stated that, "as such, [Mr. Gilbert] is entitled to the statutory presumption that he was of sound condition, unless" that presumption is rebutted. R. at 21; *see* 38 U.S.C. § 1111 (veterans shall be presumed sound upon entering service, except as to disabilities noted at that time, unless "clear and unmistakable evidence demonstrates that the injury or disease [1] existed before acceptance and enrollment and [2] was not aggravated by such service"). The Board found the first prong of the presumption rebutted, noting that "the Veteran himself has reported that he experienced depression prior to service." R. at 21. However, the Board found the second prong of the presumption unrebutted, because (1) the September 2009 examiner found that Mr. Gilbert's depression was "due to stressful events and noted that [Mr. Gilbert] reported stressful events during his service," and (2) the February 2011 VA psychiatrist's letter found Mr. Gilbert's depression and anxiety "tightly woven" to his service, such that there was not clear and unmistakable evidence that his psychiatric disabilities were not aggravated during service. R. at 22. Finding the presumption

---

[2] The examiner did note, though, that one focus of Mr. Gilbert's anxiety was guilt associated with downing an aircraft. *See* R. at 998.

3

of soundness unrebutted, the Board stated that the "presumption remains intact" and proceeded to a determination on nexus. R. at 22. In that nexus determination, the Board found by a preponderance of the evidence that Mr. Gilbert's current psychiatric disabilities were not related to service. In support of that finding, the Board noted that (1) the most probative medical opinions found no relationship between his current psychiatric disabilities and service, and (2) inconsistencies in Mr. Gilbert's account of the medical history rendered his lay assertions—and medical opinions based on those lay assertions—not credible.

## II. PARTIES' ARGUMENTS

On appeal, Mr. Gilbert argues that the Board legally erred by finding that the presumption of soundness remained intact, but subsequently finding his current disabilities not related to service. He asserts that the Board cannot circumvent the *clear and unmistakable evidence* standard of the presumption of soundness by finding no nexus under the *preponderance of the evidence* standard. Instead, he states, "[o]nce the Board determinated that such clear and unmistakable evidence did not exist [to rebut the presumption of soundness, Mr. Gilbert] . . . was entitled to have his claim considered and adjudicated based on the presumption that his preexisting psychiatric condition was aggravated by service." Appellant's Brief at 8.

The Secretary argues that, even if the second element for service connection had been established through the presumption of soundness, the third element still must be evaluated under the preponderance of the evidence standard. *See Holton v. Shinseki*, 557 F.3d 1362, 1367 (Fed. Cir. 2009) ("[T]he presumption of soundness relates to the second [service connection] element . . . [but] does not relieve the veteran of the obligation to show the presence of a current disability and to demonstrate a nexus between that disability and the in-service injury or disease or aggravation thereof." (citations omitted)); *Horn v. Shinseki*, 25 Vet.App. 231, 236 (2012) (noting that service connection requires demonstrating (1) a current disability, (2) an in-service incurrence or aggravation of a disease or injury, and (3) a nexus between the current disability and disease or injury incurred or aggravated during service). As such, the Secretary contends, it was not impermissible for the Board to find that (1) there was not *clear and unmistakable* evidence that Mr. Gilbert's psychiatric disabilities were not aggravated in service, and also that (2) the *preponderance* of the evidence

4

reflected that they were not related to service. The Secretary further argues that the Board's finding of no nexus between Mr. Gilbert's current disability and service is not clearly erroneous, such that affirmance of the Board decision is warranted.

### III. ANALYSIS

The law surrounding the presumption of soundness and its application can be confusing and has been the subject of much litigation. *See*, *e.g.*, *Wagner v. Principi*, 370 F.3d 1089, 1093 (Fed. Cir. 2004) (noting that the standard for rebutting the presumption of soundness "is somewhat difficult to parse" and that the aggravation prong for rebuttal "may seem odd" where a preexisting condition is conceded). As further discussed below, both Mr. Gilbert's arguments regarding the presumption of soundness and the Board's application of the presumption of soundness in this case reflect a general misunderstanding of the presumption and when it is for application.

#### A. The Presumption of Soundness

Grateful for their service, our Nation provides veterans compensation for disabilities "resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury . . . or disease . . . in line of duty." 38 U.S.C. § 1110; *Holton*, 557 F.3d at 1366; *Wagner*, 370 F.3d at 1093; *see also Forshey v. Principi*, 284 F.3d 1335, 1360 (Fed. Cir. 2002) (noting our nation's gratitude to a "'special class of citizens, those who risked harm to serve and defend their country'" (quoting *Bailey v. West*, 160 F.3d 1360, 1370 (Fed. Cir. 1998)). To receive such compensation, the evidence generally must show (1) a current disability, (2) an in-service incurrence or aggravation of a disease or injury, and (3) a nexus between the current disability and disease or injury incurred or aggravated during service. *Holton*, 557 F.3d at 1366; *Horn*, 25 Vet.App. at 236.

When assessing whether a disease or injury was incurred in service, however, there are "situation[s] where a question arises whether a veteran's medical problems that arose during service existed before he joined the armed forces and, therefore, were not incurred 'in line of duty'" for purposes of disability compensation under section 1110. *Dye v. Mansfield*, 504 F.3d 1289, 1293 (Fed. Cir. 2007). Section 1111's presumption of soundness addresses that situation, by mandating that veterans are presumed to have been in sound condition upon entry into service, except as to

5

disabilities noted at that time.[3]  38 U.S.C. § 1111; *Dye*, *supra*; *see also Holton*, 557 F.3d at 1367 (noting that the "presumption of soundness relates to the second element [of service connection] . . . , the showing of in-service incurrence or aggravation of a disease or injury").

### B.  Proper Application of the Presumption of Soundness

Thus, to help a veteran combat any contention that his disease or injury preexisted service, the presumption of soundness serves as a shield against any assertion by the Secretary that a veteran's in-service disability that was not noted upon entry to service preexisted service.  *See Dye*, *supra*; *Wagner*, 370 F.3d at 1095 (noting that the presumption of soundness was strengthened in 1943 in part based on concerns at that time that veterans would be denied benefits "on the theory that they were disabled before they were ever taken into the service" (quoting 89 Cong. Rec. 7,386 (1943) (statement of Rep. Rankin))).  On the other hand, the presumption of soundness is not a sword for the veteran to fulfill the second element of service connection without any evidence of the manifestation of an in-service disability.  Otherwise stated, before the presumption of soundness is for application, there must be evidence that a disease or injury that was not noted upon entry to service manifested or was incurred in service.  *See Holton*, 557 F.3d at 1367 (the presumption of soundness does not "relieve the veteran of the burden of showing that [he] suffered from a disease or injury while in service"); *Horn*, 25 Vet.App. at 236 ("In order to invoke the presumption of soundness, a claimant must show that he or she suffered from a disease or injury while in service."); *see also Dye*, 504 F.3d at 1293 (presumption of soundness involves question of preexistence of "medical problems that arose during service"); *Wagner*, 370 F.3d at 1093 (disability compensation requires "'personal injury suffered or disease contracted in line of duty'" (quoting 38 U.S.C. § 1110)).[4]

---

[3] As noted previously, this presumption may be rebutted "where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service."  38 U.S.C. § 1111; *see Horn*, 25 Vet.App. at 235.

[4] Board findings regarding whether a claimant suffered from an injury or disease in service, and whether that in-service disease or injury is related to a current disability or one that preexisted service, are questions of fact to be reviewed by the Court under the "clearly erroneous" standard.  *McLendon v. Nicholson*, 20 Vet.App. 79, 82 (2006) (Board's finding that a veteran suffered an in-service event, injury, or disease is reviewed under the "clearly erroneous" standard); *Coghill v. Brown*, 8 Vet.App. 352, 345 (1995) (holding that Board's finding of no relationship between any in-service injury and a current disability was "not clearly erroneous"); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) ("'A finding is "clearly erroneous" when . . . the reviewing court on the entire evidence is left with the definite and firm

Once the presumption of soundness is applied, if the Secretary is unable to rebut the presumption, the disease or injury that manifested in service is deemed incurred in service, such that the second element of service connection is established. *See Horn*, 25 Vet.App. at 236 ("When VA fails to carry its burden as to either preexistence or lack of aggravation," the veteran's entitlement to compensation is "determined upon the assumption that the [disease or] injury was incurred during service." (quoting *Wagner*, 370 F.3d at 1094)); *see also Wagner*, 370 F.3d at 1096 ("[I]f the government fails to rebut the presumption of soundness . . . , the veteran's claim is one for service connection [based on in-service incurrence]. This means that no deduction for the degree of disability existing at the time of entrance will be made if a rating is awarded."). Moreover, contrary to Mr. Gilbert's first argument, because the failure to rebut the presumption of soundness results in an injury or disease being deemed service incurred, there is no presumption of aggravation following application of the presumption of soundness. *See Horn*, 25 Vet.App. at 234 (noting that the presumption of aggravation only involves disabilities noted upon entry to service); *see also* 38 U.S.C. § 1153; *Wagner*, 370 F.3d at 1094 ("[I]t is clear that Congress intended . . . to effectively convert aggravation claims into ones for service connection [based on in-service incurrence] when the government fails to overcome the presumption of soundness.").

## C. Nexus Determination

Even if an injury or disease is deemed incurred in service by virtue of the presumption of soundness (or found to be actually incurred in service), a veteran still must establish that he has a current disability that is related to the in-service injury or disease. *See Holton*, 557 F.3d at 1367 ("The presumption of soundness . . . does not relieve the veteran of the obligation to show the presence of a current disability and to demonstrate a nexus between that disability and the in-service injury or disease or aggravation thereof."). Moreover, that nexus determination is based on a weighing of the evidence by the preponderance of the evidence standard, with the benefit of the doubt given to the veteran. *See Gilbert*, 1 Vet.App. at 55 ("[If] the evidence supports the claim or

---

conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))). On the other hand, whether the Board findings amount to clear and unmistakable evidence sufficient to rebut the presumption of soundness is reviewed de novo under the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard of review. *See Joyce v Nicholson*, 19 Vet.App. 36, 49-50 (2005) (citing 38 U.S.C. § 7261(a)(3)(A)); *see also Horn*, 25 Vet.App. at 236.

is in relative equipoise," the claim is granted, and if "a fair preponderance of the evidence is against the claim, . . . the claim is denied."). Contrary to Mr. Gilbert's argument, the Board is not circumventing the "clear and unmistakable evidence" standard of the presumption of soundness by employing the "preponderance of the evidence" standard for its nexus determination. This is because the legal standards for finding a nexus and for rebutting the presumption of soundness are different, *compare* 38 U.S.C. § 1111, *with Gilbert*, 1 Vet.App. at 35, and the proper application of those different standards does not constitute a circumvention of one for the other. *Cf. McLendon*, 20 Vet.App. at 81, 83 (holding that the Board should use the preponderance standard with regard to evidence of a current disability, and the "indication" standard—"a low threshold"—with regard to evidence that the disability may be associated with an in-service event, when evaluating whether a medical examination or opinion is warranted).

## D. Application of Law

In the decision on appeal, the Board found (1) no psychiatric disorders noted upon entry to service, and (2) the presumption of soundness unrebutted (after finding clear and unmistakable evidence that Mr. Gilbert had depression before entering service, but no clear and unmistakable evidence that it was not aggravated by service), but (3) Mr. Gilbert's current psychiatric disabilities for which he was seeking benefits unrelated to service. Notably absent from the Board's statement, however, is any discussion or finding as to whether Mr. Gilbert suffered from depression while in service. As discussed above, absent the predicate finding that a pre-service disease or injury manifested or was incurred in service, the presumption of soundness is not for application.

To the extent that it could be suggested that the Board's application of the presumption of soundness without a discussion of in-service manifestation might be construed as an implicit finding that Mr. Gilbert's psychiatric disability manifested in service, any such suggestion would be misplaced here. The Board noted that (1) the service medical records reflected no complaints or treatment of in-service depression or anxiety, (2) Mr. Gilbert reported no in-service depression or anxiety upon leaving service, and (3) the exit examination report evaluated Mr. Gilbert as psychiatrically normal. The Board also found Mr. Gilbert not credible as to his recollections of his medical history. These findings do not support an argument that the Board rendered an implicit factual finding that Mr. Gilbert's depression manifested in service; rather, the Board's statement

8

reflects that it misunderstood the law or, at least, failed to explain adequately its application of the presumption of soundness.

This, however, does not end the Court's inquiry. Having determined that the Board erred, the Court must now determine whether Mr. Gilbert was prejudiced by this error. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 406-07 (2009). The Court holds that he was not.

In particular, the Board made two findings critical to this decision: first, that Mr. Gilbert was not credible as to his recollections of his medical history, including his lay testimony that he suffered from depression in service; and second, that the evidence of record did not support a finding of nexus between his current depression and an injury or disease incurred or aggravated by service. As the Court explained above, regardless of whether the Board erred in applying the presumption of soundness, a veteran must still demonstrate a nexus between his current disability and his service. *See Holton*, *supra*. The Board determined that Mr. Gilbert had not done so, and Mr. Gilbert has not persuaded the Court that this determination was clearly erroneous. *See* 38 U.S.C. § 7261(a)(4) (the Court reviews the Board's factual findings under the "clearly erroneous" standard); *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) ("An appellant bears the burden of persuasion on appeals to this Court."), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table). The Court will therefore affirm the Board's decision.

### III. SUMMARY AND CONCLUSION

The application of the presumption of soundness applies only when a disease or injury not noted upon entry to service manifests in service, and a question arises as to whether it preexisted service. *See Holton* and *Dye*, both *supra.* Under those circumstances, the presumption of soundness shields the veteran from a finding that the disease or injury preexisted (and therefore was not incurred in) service by requiring the Secretary to prove by clear and unmistakable evidence that a disease or injury manifesting in service both preexisted service and was not aggravated by service. *See Dye* and *Wagner*, both *supra.* If the Secretary rebuts the presumption, the second element of service connection has not been established, and service connection is unwarranted. *See Wagner*, *supra*. Moreover, the Secretary's inability to rebut the presumption does not give rise to a

9

presumption of aggravation; rather, the in-service disease or injury is deemed to have been incurred in service. *See Wagner* and *Horn*, both *supra*. Even when an in-service injury or disease is deemed service incurred pursuant to the presumption of soundness, disability compensation is not warranted for a current disability unless the evidence is at least in equipoise that the current disability is related to the disease or injury deemed service incurred. *See Holton* and *Wagner,* both *supra*.

Here, the Board erred by applying the presumption of soundness without addressing or finding whether Mr. Gilbert's psychiatric disability manifested in service. In this case, however, the Board's error was harmless, as it found that Mr. Gilbert's current depression lacked a nexus to service, and Mr. Gilbert has not demonstrated that this determination was clearly erroneous.

Upon consideration of the foregoing, that part of the June 30, 2011, Board decision on appeal is AFFIRMED.

KASOLD, *Chief Judge*, concurring in part and dissenting in part: I fully concur in the per curiam determination that the Board erred as a matter of law in applying the presumption of soundness when there was no predicate finding that Mr. Gilbert's depression – which was not noted upon entry to service – manifested in service. Although referenced or implied in previous caselaw, the per curiam order now clearly states that, before the presumption of soundness is for application, there must be evidence that a disease or injury – that was not noted upon entry to service – manifested in service; otherwise stated, absent such manifestation, the presumption of soundness is not for application. I also fully concur in the rejection of Mr. Gilbert's argument that the failure to rebut the presumption of soundness results in an injury or disease being presumed aggravated in service. Rather, as clearly stated in the per curiam order, when the evidence of record does not clearly and unmistakably rebut the presumption of soundness, the disease or injury that manifested in service is deemed incurred in service.

However, I dissent from the ultimate decision to affirm the Board decision on appeal. I find contradictory the Board's findings that Mr. Gilbert's depression (1) was incurred in service (which is the result of finding that the presumption of soundness was not rebutted) *and* (2) was not related to (incurred or aggravated in) service. Given these apparently contradictory findings, I believe remand is the proper remedy, so the Board can clarify and explain its findings and properly apply

10

the law. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate"); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court"); *Godfrey v. Derwinski*, 2 Vet.App. 352, 355 (1992) ("It is not the role of this Court to serve as the initial finder of fact.").